UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH MACKEY,<br><br>  Plaintiff,<br><br>  v.<br><br>E. GARCIA, et al.,<br><br>  Defendants. | Case No. 1:23-cv-00337-JLT-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH THE SETTLEMENT AGREEMENT BE DENIED<br><br>(ECF Nos. 29 and 30)<br><br>OBJECTIONS, IF ANY, DUE WITHIN 30 DAYS |

Before the Court is Plaintiff Kenneth Mackey's (Plaintiff) Motion to Compel Compliance with the Settlement Agreement the parties entered into following a Court-mediated settlement conference on March 6, 2024.

On November 8, 2024, and November 15, 2024, Plaintiff filed a motion to compel compliance and an amended motion, respectively. (ECF Nos. 29 and 30). Plaintiff argues that Defendants breached the settlement agreement by failing to timely pay the settlement amount. In response, Defendants represent that they attempted to pay the settlement amount as agreed, but that the document transferring the amount, i.e., the warrant, was stolen from the post office. Defendants have offered to send a replacement warrant, but Plaintiff has refused to sign a form needed to process that replacement warrant.

Upon review, the Court recommends that Plaintiff's Motion to Compel Compliance with the Settlement Agreement be denied.

1

## I. PROCEDURAL HISTORY

Plaintiff filed his initial complaint on March 7, 2023. (ECF No. 1). Defendants Garcia and Quintero (Defendants) filed an answer on November 15, 2023. (ECF No. 21). The parties were then directed to participate in a settlement conference. (ECF No. 22).

On March 6, 2024, the parties participated in a settlement conference before Magistrate Judge Jeremy D. Peterson. The parties reached an agreement at the settlement conference, and the settlement terms were placed on the record. (ECF No. 25). On March 7, 2024, the parties filed a stipulation for voluntary dismissal with prejudice, and the case was closed. (ECF Nos. 26 and 28).

The parties also signed a Settlement Agreement and Release, which provided, in part, that "Plaintiff shall sign a voluntary dismissal with prejudice" and that "CDCR shall pay Plaintiff $3,700.00 (the settlement amount)." (ECF No. 31, Exhibit A at 1). Further, paragraph four of the agreement provides:

> CDCR will make a good-faith effort to pay the settlement amount (minus any restitution amounts, liens and fees) within 180 days from the date Plaintiff delivers to Defendants a signed settlement agreement, a notice of voluntary dismissal with prejudice, and all of the required Payee Data Forms. Plaintiff understands that payment may be delayed by the lack of State budget, a funding shortfall despite a State budget, the processing efforts of the State Controller's Office, and other events not attributable to Defendants or CDCR. Unless expressly stated otherwise, no interest shall be paid on the settlement amount.

(ECF No. 31, Exhibit A at 2).

## II. PLAINTIFF'S MOTION AND DEFENDANTS' OPPOSITION

On November 8, 2024, Plaintiff filed a motion to compel compliance. (ECF No. 29). On November 15, 2024, Plaintiff filed an amended motion and requested that the amended motion supersede the previous one. (ECF No. 30).

In his amended motion, Plaintiff argues that the settlement agreement is a binding agreement the parties entered into "without duress." (*Id.* at 1). Plaintiff states that he has provided a signed settlement agreement and the Payee Data Forms but that CDCR has not made "a good-faith effort to pay the agreed settlement amount within 180 days" from Plaintiff's performance under the agreement. (*Id.* at 2). Plaintiff states that he is unable to pay

his restitution obligations and claims that CDCR is taking 75% of the funds. (*Id*. at 1). Plaintiff argues that Defendants should be held in contempt and requests sanctions of one thousand dollars per day for each day Defendants have delayed in providing the payment. (*Id.*)

Defendants filed an opposition on December 3, 2024. (ECF No. 31). Defendants explain that the settlement proceeds were sent to Plaintiff through a warrant, a financial instrument transferring the settlement amount. (ECF No. 31, Exhibit D). Defendants include the declaration of Norma Morales attesting to these facts and attaching accounting records and remittance advise that reflect payment was issued to Plaintiff. Specifically, attorney Morales declares that she was informed on October 28, 2024, that the settlement warrant was issued but not deposited into Plaintiff's trust account. (ECF No. 31, Morales Decl. ¶ 7). On November 21, 2024, Morales was informed that the settlement warrant was issued and mailed to a Sacramento post office box on May 2, 2024, but the post office box was broken into around the time the settlement warrant was issued. (*Id*.) Morales explains that CDCR needs Plaintiff to fill out a form STD 435 to obtain a replacement warrant. (*Id*.) Morales sent two letters to Plaintiff detailing the need to complete a form STD 435 on October 30, 2024, and November 12, 2024, and tried to set up appointments to meet and confer with Plaintiff on November 18, 2024, and November 24, 2024. (*Id*. ¶¶ 3-4 and 9).

On January 17, 2025, this Court issued a minute order requiring Plaintiff to file a response addressing whether he has refused to sign the appropriate form and if so, on what basis. (ECF No. 32). Specifically, this Court ordered that "Plaintiff shall file a response addressing whether he has in fact refused to sign a form to receive the replacement settlement check and if so, on what basis." (*Id*.)

Plaintiff filed a reply on February 12, 2025. (ECF No. 33). Plaintiff asserts that he was never informed by Defendants' counsel that the settlement warrant had been mailed or that the warrant had been lost or stolen. (*Id*. at 1). Plaintiff argues that CDCR should be aware of the settlement warrant's location and argues that the break-in is only an assumption. (*Id*. at 2). Plaintiff's reply does not address whether he has refused to sign the form or what basis he has for his refusal.

3

On March 3, 2025, Defendants filed their reply. (ECF No. 34). Defendants argue that Plaintiff's motion is moot because the Court's minute order on January 17, 2025, directed Plaintiff to sign the form STD 435. (*Id*. at 1). Defendants request the Court to enforce the January 17, 2025, order. (*Id*. at 2).

### III.  LEGAL STANDARDS

"The interpretation of a settlement agreement is governed by principles of state contract law. This is so even where a federal cause of action is 'settled' or 'released.'" *Botefur v. City of Eagle Point, Or.*, 7 F.3d 152, 156 (9th Cir. 1993) (citations omitted); *see also Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014) (state contract law governs whether parties reached an enforceable settlement agreement). Settlement agreements "must be interpreted to give effect to the mutual intent of the parties as it existed at the time, insofar as that intent can be ascertained and is lawful." *Leeman v. Adams Extract & Spice, LLC*, 236 Cal.App.4th 1367, 1374 (2015).

"In California, contract law applies to settlement agreements." *Ashker v. Newsom*, 81 F.4th 863, 875 (9th Cir. 2023) "To prevail on a cause of action for breach of contract, the plaintiff must prove (1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff." *Richman v. Hartley,* 224 Cal.App.4th 1182, 1186 (2014). "A breach of contract is '[t]he wrongful, i.e., the unjustified or unexcused, failure to perform' the terms of a contract." *Chen v. Paypal, Inc.,* 61 Cal.App.5th 559, 570 (2021).

In California, "'[t]here is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.'" *Kransco v. America Empire Surplus Lines Ins. Co.*, 23 Cal.4th 390, 400 (2000). "In essence, the covenant is implied as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Love v. Fire Ins. Exch.,* 221 Cal.App.3d 1136, 1153 (1990). A contracting party has "the duty to do everything that the contract presupposes that he will do to accomplish

4

its purpose." *McClain v. Octagon Plaza, LLC*, 159 Cal.App.4th 784, 806 (2008) (quotation marks omitted).

## IV. ANALYSIS

### A. Defendants' Request to Enforce the Order on January 17, 2025

As an initial matter, the Court will deny Defendants' request to enforce its order from January 17, 2025. In their response filed on March 3, 2025, Defendants claim that the Court has already ordered Plaintiff to sign the form to obtain a replacement warrant. (ECF No. 34).

This is not correct. The Court's minute order from January 17, 2025, stated "Plaintiff shall file a response addressing whether he has in fact refused to sign a form to receive the replacement settlement check and if so, on what basis." (ECF No. 32). The order did not order Plaintiff to sign the form STD 435. Instead, it ordered a response from Plaintiff.

Moreover, Defendants have pointed to no provision of the contract expressly requiring Plaintiff to fill out the additional form. Thus, while the Court agrees that Plaintiff cannot obtain the settlement fund without signing the form STD 435, and that Plaintiff has failed to provide any basis for refusing to do so, it will not find Plaintiff in contempt of any court order for failing to do so.

### B. Motion to Enforce the Settlement Agreement

Turning to Plaintiff's motion, Plaintiff has failed to demonstrate that Defendants have breached any provision of the agreement, and therefore, Plaintiff provides no grounds to obtain an order compelling Defendants to comply with the settlement agreement. The settlement agreement provided that "CDCR will make a good-faith effort to pay the settlement amount . . . within 180 days" of when Plaintiff provides the necessary paperwork. (ECF No. 31, Exhibit A at 2). Defendants have submitted evidence that they complied with the agreement by mailing the settlement warrant to facilitate payment to Plaintiff in the time required under the agreement, but that the warrant was subsequently stolen from the post office. Given that evidence, Plaintiff has not demonstrated that Defendants breached the agreement.

Further, the agreement also expressly provides, "Plaintiff understands that payment may be delayed by . . . the processing efforts of the State Controller's Office, and other events not

attributable to Defendants or CDCR." (*Id.*) The post-office break in is an event "not attributable to Defendants or CDCR," and thus a failure to receive payment within the 180 days due to this event is not a breach of the agreement.

Although Plaintiff contends that he was never informed that the settlement amount had been mailed, lost, or stolen, Plaintiff's own documents show otherwise. Plaintiff provides a copy of Defendants' counsel's correspondence informing him of the need for the additional form to process the replacement warrant. (ECF No. 33, Exhibit A). Additionally, Defendants have submitted evidence that on October 30, 2024, and November 12, 2024, Defendants' counsel sent Plaintiff a copy of the Form STD 435 and noted that the form is necessary to issue Plaintiff a replacement warrant. (ECF No. 31, Morales Decl. ¶¶ 3-4). Defendants' counsel also declares that she attempted to set an appointment with Plaintiff to confer regarding this issue on two separate occasions but was informed that Plaintiff declined to meet. (*Id.* ¶ 9).

Plaintiff thus has a means to receive a replacement warrant of the settlement payment without a Court order compelling Defendants' compliance with the agreement. The Form 435 would enable the State Controller's Office to issue a replacement warrant to pay Plaintiff the settlement amount. Plaintiff has not provided any explanation as to why he has not filled out the additional form necessary to obtain a replacement warrant. By completing the Form 435, Plaintiff can initiate the process for Defendants to issue a replacement warrant, which would allow Plaintiff to receive the settlement payment.

## V. CONCLUSION AND RECOMMENDATIONS

Accordingly, IT IS RECOMMENDED that:

1. Plaintiff's motion to compel compliance with the March 6, 2024, settlement agreement (ECF Nos. 29 and 30) be DENIED.
2. To the extent Plaintiff wishes to receive payment due under the settlement agreement, he is directed to sign the form STD 435.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, any party may file written

objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any objections shall be limited to no more than fifteen (15) pages, including exhibits. Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **April 3, 2025**            /s/ Erica P. Grosjean
            UNITED STATES MAGISTRATE JUDGE